## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| HUSTEEL CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | **Court No. 18-00169** |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |

_____)

### COMPLAINT

Husteel Co., Ltd. ("Plaintiff" or "Husteel"), by and through its counsel, hereby alleges and states as follows:

### JURISDICTION

1.     Husteel brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the administrative review of the antidumping duty order on Welded Line Pipe From the Republic of Korea, Case No. A-580-876, issued by the International Trade Administration of the United States Department of Commerce ("Commerce").  *See Welded Line Pipe From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2015–2016*, 83 Fed. Reg. 33,919 (Dep't Commerce July 18, 2018) ("*Final Results*") and accompanying Issues and Decision Memorandum.

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

## STANDING

3.      Husteel requested an administrative review, but was not selected for individual examination by Commerce and thus is subject to the "non-examined company" antidumping duty rate that is based on the average of the rates calculated for the two mandatory respondents. Husteel participated in the administrative proceeding leading to the *Final Results* by entering an appearance, filing an application to be under the administrative protective order, filing comments as well as case and rebuttal briefs in connection with certain aspects of that decision.  Husteel is a Korean producer and exporter of the subject welded line pipe merchandise.  Therefore, Husteel is an interested party within the meaning of 19 U.S.C. § 1677(9)(A).  Accordingly, Husteel has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4.      On July 18, 2018, Commerce published in the Federal Register the final results of the first administrative review of the antidumping duty order.  *Final Results*, 83 Fed. Reg. 33,919.  Husteel is timely filing a Summons and this Complaint within thirty days of the publication of the *Final Results*, in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court.

## STATEMENT OF FACTS

5.      On February 13, 2017, Commerce initiated the first administrative review of the antidumping duty order on Welded Line Pipe from the Republic of Korea.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 82 Fed. Reg. 10,457 (Dep't Commerce Feb. 13, 2017) ("*Initiation Notice*").  Commerce's period of review is May 22, 2015 through November 30, 2016.  Commerce chose as mandatory respondents Hyundai Steel Company ("Hyundai Steel") and SeAH Steel Company ("SeAH").

6.      On September 25, 2017, the petitioner, Maverick Tube Corporation ("Maverick") submitted an allegation that a "particular market situation" ("PMS") exists with respect to the subject welded line pipe during the POR,  particularly as it pertains to input costs associated with hot-rolled steel used to produce the subject pipe products.  In its letter, Maverick cited the PMS determinations in the oil country tubular goods ("OCTG") from Korea proceeding.  Commerce accepted Maverick's PMS allegation and sought comments from interested parties.

7.      On January 9, 2018, Commerce issued its *Preliminary Results*.  *See Welded Line Pipe from Korea: Preliminary Results of Antidumping Duty Administrative Review; 2015–2016*, 83 Fed. Reg. 1,023 (Dep't Commerce Jan. 9, 2018) (*Preliminary Results*).  In its *Preliminary Results*, Commerce determined that a PMS existed with respect to hot-rolled steel inputs and calculated antidumping duty margins of 19.42 percent for Hyundai Steel and 2.30 percent for SeAH.  *Id.*  As part of its *Preliminary Results*, Commerce assigned a preliminary margin of 10.86 percent to all other "non-examined companies" based on the average of the rates calculated for the mandatory respondents.  *Id.*  This preliminary rate applied to Husteel.  *Id.* at 1,024.

8.      In March and April, interested parties, including Husteel, submitted case and rebuttal briefs addressing issues in the Department's preliminary results in the Department's separate preliminary decision memorandum with respect to the PMS issue.

9.      On July 18, 2018, Commerce issued its *Final Results*, and affirmed its preliminary decision that a PMS existed in relation to the cost of inputs to the production of the subject welded line pipe merchandise.   Based on changes due to issues other than the PMS, Commerce decreased Hyundai Steel's margin to 18.77 percent, and Commerce increased SeAH's margin to 17.81 percent.  As a result of these changes to the margins as calculated in the

*Final Results*, the rate applicable to all other "non-examined companies," including Husteel increased to 18.30 percent.

10.    The legal and factual bases for Commerce's *Final Results* were set forth in the agency's unpublished Issues and Decision Memorandum, dated July 11, 2018.

### STATEMENT OF CLAIMS

11.    Commerce's *Final Results* is unsupported by substantial record evidence and is otherwise not in accordance with law in the following respects:

### COUNT I

12.    Paragraphs 1 through 11 of this Complaint are incorporated herein by reference.

13.    In its *Final Results*, Commerce determined that a "particular market situation" existed during the POR with respect to the cost of inputs (hot-rolled steel coil) used in the production of welded line pipe.  In support of its conclusion, the agency pointed to (1) subsidization of hot-rolled steel products by the Korean Government, (2) the distortive pricing of unfairly traded Chinese HRC; (3) strategic alliances between Korean HRC suppliers and Korean WLP producers; and (4) distortive government control over electricity prices in Korea.  *See Final Results* and accompanying Issues and Decision Memorandum at Comment 1.

14.    To quantify a particular market situation adjustment to Hyundai Steel's and SeAH's reported costs, Commerce looked to its prior countervailing duty investigation of Hot-Rolled Steel Coil from Korea.  *See Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Final Affirmative Determination*, 81 Fed. Reg. 53,439 (Dep't Commerce Aug. 12, 2016).  In that case, Commerce calculated subsidy rates of 57.04 percent for Korean producer POSCO (based on total adverse facts available) and 3.89 percent for Korean producer Hyundai Steel (based on partial adverse facts available) and all

other companies.  *Id.*[1]   Commerce applied these subsidy rates (adjusted to remove export subsidies) to Hyundai Steel's and SeAH's hot-rolled steel coil inputs used to produce welded line pipe, on a supplier specific basis.  For self-produced and sourced hot-rolled steel coil used in the production of subject circular welded non-alloy steel pipe, Commerce increased the reported input costs by the partial AFA rate assigned to Hyundai Steel. These extraordinary modifications to the Department's calculations had a direct impact on the margin applicable to Husteel.

15.     Commerce's particular market situation determination and resulting adjustment are unsupported by substantial record evidence and contrary to law in a number of respects. Commerce's particular market situation adjustments impermissibly inserted subsidy findings and adverse facts available findings from a separate proceeding into the instant determination.  In this appeal, Husteel challenges these and all other aspects of Commerce's particular market situation determination and resulting calculation adjustments for the mandatory respondents, as these issues directly impacted the final rate applicable to Husteel.

## COUNT II

16.     Paragraphs 1 through 15 of this Complaint are incorporated herein by reference.

17.     As described above, in its *Final Results*, Commerce used CVD rates based on adverse facts available as assigned in the agency's hot-rolled steel from Korea CVD case.  In using these rates (1) to inflate the mandatory respondents' antidumping duty margins, and (2) to build them into the calculation of the "non-examined company" average margin rate applicable to Husteel, Commerce in essence used total adverse facts available margins to calculate the "non-examined company" rate.  Using adverse facts available rates to establish the average rate

---

[1] Based on ministerial errors, the POSCO AFA rate was later amended to 58.68 percent.  *Certain Hot-Rolled Steel Flat Products From Brazil and the Republic of Korea:  Amended Final Affirmative Countervailing Duty Determinations and Countervailing Duty Orders*, 81 Fed. Reg. 67,960 (Dep't Commerce Oct. 3, 2016).

in a proceeding runs counter to the statute and Commerce's practice.   As such, the agency's calculation of Husteel's margin is unsupported by substantial record evidence and contrary to law.

**REQUEST FOR RELIEF**

For the foregoing reasons, Husteel respectfully requests that this Court hold Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in accordance with law.  Therefore, Husteel respectfully requests that this Court remand the *Final Results* to Commerce to correct the errors set forth in this complaint and provide other such relief as this court deems appropriate.

Respectfully submitted,

/s/ Donald B. Cameron
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Sabahat Chaudhary
Ragan W. Updegraff

MORRIS MANNING & MARTIN LLP
1401 Eye Street, NW, Suite 600
Washington, D.C. 20005
(202) 216-4811

*Counsel to Plaintiff Husteel Co., Ltd.*

Dated:  August 2, 2018